UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RWJ MANAGEMENT COMPANY, INC. and JOLIET PETROLEUM, LLC et al )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>BP PRODUCTS NORTH AMERICA, INC., and )<br>NRC REALTY & CAPITAL ADVISORS, LLC )<br>)<br>Defendants. ) | No. 09 C 6141<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiffs RWJ Management Co. and Nrupesh Desai, and the limited liability companies controlled by them, allege a number of claims against Defendants BP Products North America, Inc. and NRC Realty & Capital Advisors, LLC. The claims arise from Plaintiffs' purchase of seventeen BP franchises between 2006 and 2008 and include the following: common law fraud (Count I); violations of the Illinois Franchise Disclosure Act ("IFDA") (Counts II and III); violations of the Indiana Franchise Act (Count IV); breach of contract (Count V); tortious interference with prospective business relationships (Count VII); and negligent misrepresentation (Count VIII). (Fifth Am. Compl. [106] at 16-26.) Plaintiffs also seek a declaratory judgment that certain deed restrictions imposed by BP are invalid (Count VI). (*Id.* at 23-34.) A claim for violation of the Robinson-Patman Act, 15 U.S.C. § 13 *et seq.*, was dismissed voluntarily.

Plaintiffs and Defendants have filed cross-motions for summary judgment on nearly every issue in the case. The Desai Plaintiffs seek a partial summary judgment and award of rescission based on Defendants' alleged failure to provide a disclosure statement as required by Illinois law. (Mot. for Partial Summ. J. [248] [hereinafter "Desai Br."].) The RWJ Plaintiffs have filed a similar motion seeking a declaration of liability on the disclosure issue. They also seek a declaration of liability for BP's alleged failure to register its dealer fuel supply agreement as a franchise and for BP and NRC's failure to disclose NRC as a franchise broker. (Mot. for Partial Summ. J. [252] at

1-2 [hereinafter "RWJ Br."].) Defendants have filed motions for summary judgment on Plaintiffs' statutory claims under the IFDA and other franchise-related claims [257], on the fuel pricing claims [258], and on the fraud claims [259].

## **DISCUSSION**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 720 (7th Cir. 2008).

### **Illinois Franchise Disclosure Act Claims**

Plaintiffs have alleged violations of the statutory registration requirements imposed by IFDA (Count II). They allege, further, a fraud in violation of IFDA (Count III). Plaintiffs seek summary judgment on Count II. Defendants seek summary judgment on both Counts II and III on statute of limitations grounds. The court addresses that defense first.

### A.   Statute of Limitations

Defendants argue that Plaintiff's IFDA claims are barred by the statute of limitations. The statute imposes three different limitations periods, depending on whether and what type of notice plaintiff may have of the alleged violation. *See* 815 ILCS 705/27.[1] It is undisputed that the Desai Plaintiffs signed their first Purchase and Sales Agreement ("PSA") on July 5, 2006, and that the RWJ Plaintiffs did so on the following day. (SOF [263] ¶ 56, 57.) RWJ filed suit on July 6, 2009, and Desai on July 23, 2009. (SOF ¶ 131, 132.) NRC was added as a Defendant on Sept. 8, 2009.

---

[1] Specifically, the statute provides: "No action shall be maintained . . . to enforce any liability created by this Act unless brought before the expiration of 3 years after the act or transaction constituting the violation upon which it is based, the expiration of one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Act, or 90 days after delivery to the franchisee of a written notice disclosing the violation, whichever shall first expire."

2

(SOF ¶ 133.)

The threshold issue is which of the three statues of limitations applies here. A 90-day limitations period runs from the time when franchisee receives "a written notice disclosing the violation." 815 ILCS 705/27. Defendants contend that Plaintiffs received a document in 2006 with a disclaimer explaining that the failure to receive such disclosures on time could constitute a franchise law violation. (Response [300] at 3.) That disclosure, Defendants contend, triggered the running of the statute. Although case law on this provision is sparse, at least one court has held that the 90-day period did not begin to run where the notice "neither mentioned the IFDA nor admitted any fault on [defendant's] part." *H.R.R. Zimmerman Co. v. Tecumseh Products Co.*, No. 99 C 5437, 2001 WL 289867 at *3 (N.D. Ill. March 15, 2001). This case differs in that Defendants' disclaimer did make reference to legal disclosure requirements. It did not signal the type of "flat-out violation" required to trigger 90-day limitations period, however. *See R.N.F. Enterprises, Inc. v. Ecowater Systems, Inc.*, No. 02 C 2904, 2002 WL 1377860, at *2 (N.D. Ill. June 24, 2002). It also made no express reference to the time limitations imposed by the Illinois statute, and the court therefore declines to find these claims barred by the 90-day limitation.

A one-year limitations period applies when "the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Act." 815 ILCS 705/27. Illinois courts give "franchisees a break on the statute of limitations until they have had a chance to consult with an attorney." *Pyramid Controls Inc. v. Siemens Indus. Automation, Inc.*, 172 F.3d 516, 519 (7th Cir. 1999). Plaintiffs have presented evidence that they were not aware of the nature of their claims for at least some months after they entered into the franchise agreements, and they did not meet with an attorney specifically regarding these claims until late spring 2009. (Response [303] at 32.) The court concludes that disputes of material fact preclude enforcement of the one-year limitations period on summary judgment.

The three-year limitations period elapses three years "after the act or transaction

constituting the violation upon which it is based." 815 ILCS 705/27.  Plaintiffs argue that the "act or transaction" at issue is the signing of the actual franchise agreements, (Response at 35-36), because the alleged violation upon which they are suing is the lack of disclosure prior to the signing of the PSA.  The Desai Plaintiffs' claims against BP based on the two Joliet locations are barred because more than three years elapsed after those Plaintiffs signed the PSA but before filing suit.  The Desai Plaintiffs' claims as to those two locations are also barred as against NRC.  And RWJ's claims against NRC based on the Romeoville, Crestwood, Plainfield, and Forest View locations are barred as well, because NRC was not added as a Defendant until September 2009.

### B. Merits of IFDA Claims

#### 1. IFDA Disclosure claims

Having concluded that certain of the IFDA disclosure claims in Count II survive the timeliness challenge, the court turns to the merits of those claims.  The IFDA requires that franchisees receive certain disclosures two weeks prior to the execution of "any binding franchise or other agreement," or prior to the tender of consideration.  815 ILCS 705/5(2).  Plaintiffs assert that they did not receive the required disclosures prior to signing a PSA and tendering funds into escrow.  Defendants have made three alternative arguments against these claims:  that Plaintiffs did receive the disclosures prior to these events; that disclosures were not required until the signing of the actual franchise agreement; or that the Plaintiff's payment of certain funds prior to the signing of the franchise agreement did not constitute a tender of consideration because those payments were refundable.  (Response [297] at 3-4 [hereinafter "RWJ Response"]; Response [300] at 3-4, 8 [hereinafter "Desai Response"].)

The court concludes that the PSA signed by the franchisees was an "agreement" within the meaning of the IFDA that would trigger the disclosure requirements, and that the funds tendered into escrow were "franchise-related," *My Pie Intern. Inc. v. Debould, Inc.*, 687 F.2d 919, 923 (7th Cir. 1982), and therefore triggered the disclosure provision.  Whether or not Plaintiffs received the

4

proper disclosures within the time frame imposed by the statute is a factual issue that will be resolved at trial. Because Plaintiffs are not entitled to summary judgment on this claim, the court declines to rule at this stage on Defendants' argument that the Desai Plaintiffs are not entitled to rescission and that Plaintiffs cannot prove damages. The court also reserves for trial the determination of whether Plaintiffs can show that the alleged nondisclosures were material and caused harm.

The RWJ Plaintiffs ask for partial summary judgment on two additional issues: BP's failure to register its dealer fuel supply agreement ("DSA") as a separate franchise opportunity and its failure to provide the mandated disclosures for that franchise; and its failure to disclose NRC as a franchise broker. (RWJ Br. at 6-7, 10.) Defendants urge that the DSA is not a separate franchise but is instead part of the franchise agreement between BP and Plaintiffs. Plaintiffs insist that the DSA constitutes a separate franchise for which independent disclosures are required, but they cite no authority or contractual language in support of this novel theory, and the court does not find it persuasive. (RWJ Response at 14.) RWJ also argues that NRC should have been registered as a franchise broker. (RWJ Br. at 10.) The IFDA defines a "franchise broker" as "any person engaged in the business of representing a franchisor in offering for sale or selling a franchise." 815 ILCS 705/3(21). Again, as BP notes, RWJ has not cited any authority supporting this argument, any specific facts supporting its interpretation, or any cause of action related to this claim. Plaintiffs' motion for summary judgment on this issue is denied.

Plaintiffs have also asserted a "false earnings data" claim in Count II. Defendants insist they are entitled to summary judgment on that claim, as well. Because numerous disclaimers were provided to Plaintiffs, Defendants argue, any claim that they were provided with false earnings data is precluded as a matter of law. (Mem. in Supp. of Summ. J. on Franchise Claims at 10 [hereinafter "Franchise Br."].) Generally, a written disclaimer will be effective against an oral representation accompanying that disclaimer. *Carr v. Cigna Securities, Inc.*, 95 F.3d 544, 547 (7th Cir. 1996).

5

Plaintiffs insist the disclaimer is ineffective to defeat their "false earnings data" claim because the disclaimer was limited to projections of future performance. According to Plaintiffs, Defendants provided false information concerning *past* performance. (Response [303] at 17.) Allegations related to "actionable misrepresentations that would not have been revealed by reading the Contract" survive a general disclaimer. *Chicago Printing Co. v Heidelberg USA, Inc.*, No. 01 C 3251, 2001 WL 1134862, at *5 (N.D. Ill. Sept. 25, 2001). Because Plaintiffs allege that Defendants provided fictitious earnings numbers, disclosures regarding future performance projections are irrelevant, and Defendants' motion for summary judgment on these claims is denied.

### 2. Damages

Defendants insist that the IFDA claims in Count II and Count III should be dismissed because Plaintiffs cannot prove any damages. Such a showing is required for the RWJ Plaintiffs (though not for the Desai Plaintiffs, who seek only rescission). Plaintiffs have not yet proved damages, but they are not required to do so at this stage. Plaintiffs have proposed several measures of their alleged damages, and Defendants have not satisfied the court that all of those proposed measures of damages are invalid as a matter of law. Whether Plaintiffs have actually suffered damages is a factual issue to be resolved at trial; Defendants' motion for summary judgment on this basis is denied.

### 3. IFDA Fraud Claims

Defendants ask the court to dismiss Count III because the statutory fraud claims are duplicative of Plaintiffs' claims for common law fraud count in Count I. "It is well settled that duplicative counts in a complaint may be properly dismissed." *DeGeer v. Gillis*, No. 09 C 6974, 2010 WL 1609914, at *8 (N.D. Ill. Apr. 21, 2010). But Plaintiffs argue that there are a number of differences between Counts I and III, including the availability of an award of costs and attorneys fees for fraud under the IFDA. (Response at 43.) "Plaintiffs can pursue different causes of action based on the same set of facts, though they can recover only once for the injury." *Freedom Mortg.*

*Corp. v. Burnham Mortg., Inc.,* 720 F.Supp.2d 978, 992 (N.D. Ill. 2010) (citation and quotation omitted). Because these are different causes of action offering different types of relief, the court overrules Defendants' objection to Count III as duplicative of the claims presented in Count I.

Defendants argue that Plaintiffs have waived their fraud claims under Count I and Count III by making statements inconsistent with the intention to sue after discovering the fraud, and by continuing to purchase franchises from BP. "Waiver will apply if a party, after discovering the alleged fraud and with full knowledge of its material aspects, engages in conduct which is inconsistent with an intention to sue." *Boatmen's Bank of Benton v. Durham,* 203 Ill. App.3d 921, 928, 561 N.E.2d 206, 211 (5th Dist. 1990). Plaintiffs argue they did not waive any of their fraud claims. They contend that because the business irregularities they were experiencing took a long time to recognize and comprehend, they only recently became aware of the alleged fraud. That they would continue to purchase franchises was always part of their overall business plan and necessary for that plan to be profitable. (Response at 20-23.) Plaintiffs present a plausible explanation for their failure to bring these claims earlier, and for their earlier statements expressing satisfaction with BP. The court denies summary judgment on Counts I and III based on waiver.

Finally, because Indiana franchise law is substantially similar to IFDA, the court adopts the same rulings with respect to Defendants' motion for summary judgment against RWJ's Indiana franchise claims.

**Common Law Fraud Claims**

Defendants next make a series of arguments relating to Plaintiffs' common law fraud claims in Count I. Defendants first argue that the claims should be dismissed because they are economically irrational. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986). Specifically, Defendants argue that it makes no economic sense for BP to defraud its franchisees "since the only way for BP to make money was for Plaintiffs to stay in business." (Mem. in Supp. of Summ. J. on Fraud Claims at 4 [hereinafter "Fraud Br."].) Plaintiffs respond that "[i]t is

7

hardly 'irrational' for the plaintiffs to claim that BP defrauded them into paying $42 million for the privilege of taking money-losing stations off of its hands." (Response at 2.)  The court agrees that it is not irrational for a business to sell an unproven or potentially risky dealership; the fact that BP benefits if its dealers are profitable does not require the conclusion that BP might prefer not to have a capital investment in a dealership that could fail.  The court denies summary judgment based on this theory.

Defendants next argue that Plaintiffs cannot prove they relied on the alleged misrepresentations and omissions when bidding for the franchises, as required for a fraud claim to succeed.  (Fraud Br. at 6-7.)  In support of this argument, Defendants point to Plaintiffs' admissions that they did not prepare "pro-formas" in some instances until after they had prepared their bids, and used figures in some cases not even provided by Defendants.  (*Id.* at 8.)  Plaintiffs respond by asserting that in pursuing the franchise businesses, they relied not only on historical sales figures that they now believe to be fraudulent, but also on Defendants' implicit endorsement of their business plan and the projected figures contained within that plan. (Response at 13-15.)

Defendants again urge that in light of the disclaimers made by BP, Plaintiffs' alleged reliance on the figures BP provided could not have been reasonable.  (Fraud Br. at 8.)  As described above, Plaintiffs have emphasized that they did not rely on BP's projections of future earnings (the subject of BP's disclaimers) but instead on historical data–data they contend was false, and that was not the subject of disclaimers.  (Response at 16-17.)  There remains a triable issue of fact as to whether Plaintiffs relied on Defendants' misrepresentations and omissions, and whether such reliance was reasonable.  Summary judgment based on this argument is denied.

**Negligent Misrepresentation**

Count VIII asserts a negligent misrepresentation claim against NRC.  Defendant seeks summary judgment on this count on the same bases they sought summary judgment in their favor on the fraud claims.  Thus, they urge, "NRC made no false statements, NRC never intended to

8

induce Plaintiffs to act, and Plaintiffs never actually relied on the truth of NRC's statements." (Fraud Reply Br. at 20.)  These are factual questions, and the court cannot say as a matter of law that Plaintiffs' negligent misrepresentation claim fails.  Summary judgment is therefore denied.

Perhaps because Count VIII is aimed only at NRC, a realtor, Defendant has not invoked the *Moorman* doctrine as a defense to this claim.  Under that doctrine, those who sell goods cannot be liable for purely economic losses based on negligent representations.  *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 89, 435 N.E.2d 443, 452 (Ill. 1982).  *Moorman* recognizes an exception, however, that imposes liability for economic losses "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations."  *Id.* at 88, 435 N.E.2d at 452.

**Breach of Contract**

Finally, Defendants argue that Plaintiffs' claims for breach of contract fail as a matter of law. First, Defendants argue that Plaintiffs have not pointed to any specific contractual provision at issue.  "[Plaintiff]'s breach of contract claim is destined to fail because [Plaintiff] has not directed the court to any particular contract provision that [Defendant] is alleged to have breached."  *Hall-Moten v. Smith*, No. 05 C 5510, 2009 WL 1033361, at *8 (N.D. Ill. Apr. 17, 2009).  Plaintiffs contend that BP "breached the franchise agreement in a variety of ways" identified in Paragraphs 78(a)-(k) of the Fifth Amended Complaint.  (Response at 23.)  Those sections of the complaint, however, do not identify specific provisions that have been breached.

Plaintiffs do identify two specific provisions in their response to the instant motion.  First, they allege that BP has breached Section 3 of the Dealer Supply Agreement by failing to set prices in good faith.  Second, they allege that "under the Franchise Agreements, BP controlled every aspect of the c-story business"; they continue by outlining those provisions and arguing that "[t]aking all of these express contract provisions together, the franchisee is virtually 100% dependent for its success on BP's proper exercise of discretion." (Response at 23-24.)  The only

9

provision that Plaintiffs directly allege has been breached, however, is that relating to back-office management and computer systems. (*Id.* at 24.) Because Plaintiffs have failed, in almost every instance, to identify the specific contractual provisions breached, Defendants' motion for summary judgment is granted as to every item in Count V except for Paragraphs 74, 75, and 78(e), relating to the setting of fuel prices and the provision of a workable back-office system. Defendants argue that they are entitled to summary judgment on these remaining claims because Plaintiffs cannot demonstrate any damage stemming from these breaches. Recognizing that Plaintiffs may be unable to show that the purportedly unworkable back-office system and alleged bad faith setting of fuel prices resulted in damages, the court nevertheless declines to dismiss these claims as a matter of law.

**Deed Restriction and Pricing Claims**

The court reserves ruling on Defendants' motion for summary judgment on the deed restriction at this time because such a ruling will depend on the outcome of the other issues in the case, particularly whether there is a finding that Plaintiffs were indeed defrauded by Defendants, and what remedy Plaintiffs may be entitled to, should they prevail at trial (if Plaintiffs elect rescission, the deed restrictions would be moot). The court also reserves ruling on Defendants' motion for summary judgment on Plaintiffs' pricing claims, because the viability of those claims depends on whether Plaintiffs' pricing expert survives a pending motion to exclude.

## CONCLUSION

For the reasons explained above, Defendants' motions for summary judgment are granted in part and denied in part without prejudice. Should the evidence at trial fail to establish any of Plaintiffs' claims, Defendants will be free to seek relief pursuant to Rule 50. Plaintiffs' motions for summary judgment are denied.

Finally, the court notes a concern about its jurisdiction. This case was removed based upon Defendants' assertions that Plaintiffs' claims included alleged violations of the Petroleum Marketing

Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq*. The complaint has been amended several times since removal, however, and no PMPA claim remains before the court. Plaintiffs did assert a federal law claim in the Fourth Amended Complaint: an alleged violation of the Robinson-Patman Act, 15 U.S.C. § 13(c). As of January 6, 2011, however, that claim has been withdrawn, as well. There are no federal claims remaining before the court, and diversity jurisdiction is lacking. "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, 28 U.S.C. § 1367(c)(3); *Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir.2009), which the plaintiff can then prosecute in state court." *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). The parties to this case are directed promptly to show cause why the court should not remand this case to the Circuit Court of Cook County.

ENTER:

Dated: January 12, 2011

_____
REBECCA R. PALLMEYER
United States District Judge